**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**KENNETH STEWART, JR.**                                              **PLAINTIFF**

**v.**                              **Case No. 3:13-cv-00057-KGB**

**NUCOR CORPORATION**                                              **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Kenneth Stewart, Jr., brings this action for personal injuries resulting from an industrial accident at defendant Nucor Corporation's steel mill in Blytheville, Arkansas (Dkt. No. 1).  Before the Court is Nucor's motion for summary judgment (Dkt. No. 45), to which Mr. Stewart responded (Dkt. No. 48) and Nucor replied (Dkt. No. 50).  For the reasons below, the Court grants Nucor's motion for summary judgment (Dkt. No. 45).  Mr. Stewart's pending motion *in limine* is denied as moot (Dkt. No. 53).

### I.        Factual Background

Unless otherwise noted by citation, the following facts are taken from Nucor's statement of material facts not in dispute (Dkt. No. 47) and Mr. Stewart's response to statement of material facts (Dkt. No. 49).

Mr. Stewart began working for Vesuvius USA in May 2010.  Prior to accepting employment with Vesuvius, Mr. Stewart had a welding diploma and work experience with at least five employers performing welding and similar tasks.  Nucor submits an affidavit from Charles A. Hays, the Chief Executive Officer of Systems Contracting Corporation, who avers that the corporation routinely hired MIG and arc welders and employed six new welders at its Blytheville location during the months of May and June 2010 (Dkt. No. 45-3).  Mr. Stewart disputes that the affidavit shows the corporation was hiring workers with his job skills, but Mr.

Stewart's complaint alleges that he has "special skills" as a MIG and arc welder (Dkt. No. 1-1, at 5).

Pursuant to an agreement between Vesuvius and Nucor, Vesuvius placed Mr. Stewart for work in Nucor's steel mill in Hickman, Arkansas.  Before beginning work in the Nucor mill, Mr. Stewart signed and dated a document titled "Third Party Waiver for Contractors/Vendors."  The parties agree that Mr. Stewart has a high school diploma and can read and write (Dkt. No. 49, at 2).  The parties agree that Mr. Stewart signed his name, printed his name, and dated the form titled "Third Party Waiver for Contractors/Vendors."  (Dkt. No. 49, at 2).  The parties dispute whether Mr. Stewart was required to sign this document before being allowed to work in the Nucor mill (Dkt. No. 49, at 2), but the Court notes that the Third Party Waiver includes the phrase "[a]s a condition of my employment . . ." (Dkt. No. 45-2, at 34).

In pertinent part, the Third Party Waiver reads:

As a condition of my {employment} {continued employment} with Vesuvius and in recognition of the fact that any work related injuries which might be sustained by me or covered by state Workers' Compensation laws, I hereby waive, to the extent permitted by law, any right I might have to make claims or bring suits against the following classes or categories of persons or entities arising out of or as a result of injuries sustained by me, which are covered under workers compensation laws:

> (a)  Any persons or entities having ownership, possession, or control of or over the premises or work sites at which my work will be performed;

> . . . .

> (c)  Any persons or entities performing work at, on, or about the premises or work sites at which my work will be performed;

> . . . .

(*Id.*). Mr. Stewart dated his signed copy of the Third Party Waiver as June 2, 2010, which also was witnessed, signed, and dated by a Nucor employee (*Id.*)

The parties also dispute whether Mr. Stewart had the opportunity to read the Third Party Waiver (Dkt. No. 49, at 2).  However, after admitting during his deposition that the Third Party Waiver was in his possession and that he could read and write, Mr. Stewart answered "[y]es" to the question "so you had the opportunity to look at this paperwork that was given to you there at this particular job, right?" (Dkt. No. 45-2, at 20).  Even so, Mr. Stewart contends that he was presented with the Third Party Waiver, which was drafted by Nucor, as part of a packet of materials that he was asked to sign and date after a full day of watching training videos (Dkt. No. 49, at 4-5).  He also alleges that he was required simultaneously to watch a safety video on which he would have to answer questions (*Id.*).  Mr. Stewart claims this rushed him because he believed he would not be hired by Vesuvius if he did not answer the safety video questions correctly (*Id.*).  The parties agree that Mr. Stewart asked no questions regarding the meaning of the Third Party Waiver.

As an employee of Vesuvius performing work at the Nucor mill, Mr. Stewart suffered an injury on July 23, 2010.  The allegations in Mr. Stewart's complaint arise from this injury.  As a result of the injury, Mr. Stewart received workers' compensation benefits from Vesuvius's workers' compensation insurance company.  The parties agree that, at the time of Mr. Stewart's injury, Nucor was an entity having ownership, possession, or control of or over the premises or work sites at which his work was being performed.  In responses to requests for admission, Mr. Stewart also admitted that Nucor was an entity performing a portion of the work at or about the premises or work site at which his work was being performed (Dkt. No. 45-1, at 3).

## II.    Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the

defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.    Analysis

Nucor contends that, under the Third Party Waiver that was part of his contract of employment with Vesuvius, Mr. Stewart waived his right to make a claim or file a suit against Nucor for work-related injuries he sustained that were covered by worker's compensation.  The Third Party Waiver is an exculpatory contract, which is a contract "in which a party seeks to absolve himself in advance for the consequences of his own negligence." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Guardtronic, Inc.*, 64 S.W.3d 779, 782 (Ark. 2002).  In interpreting an exculpatory contract, the Court must strictly construe the contract against the party relying on it and, under the "total transaction" approach, consider the language of the release and "the facts and circumstances surrounding the execution of the release in order to determine the intent of the

4

parties." *Finagin v. Ark. Development Finance Auth.*, 139 S.W.3d 797, 806 (Ark. 2003); *Miller v. Pro-Transportation*, 77 S.W.3d 551 (Ark. Ct. App. 2002) (citing *Plant v. Wilbur*, 47 S.W.3d 889 (Ark. 2001)).

The Court determines, and the parties apparently do not dispute, that if the Third Party Waiver is enforceable, then Mr. Stewart waives his right to bring this lawsuit under its terms. However, Mr. Stewart argues that the Third Party Wavier is not enforceable. An exculpatory contact is enforceable when: (1) the party is knowledgeable of the potential liability that is released; (2) the party is benefiting from the activity that may lead to the potential liability that is released; and (3) the parties fairly entered into the contract that contains the clause. *Finagin*, 139 S.W.3d at 808. Mr. Stewart contends that summary judgment is not appropriate because there is a genuine issue of material fact as to (1) whether he was knowledgeable of the potential liability that was released and (2) whether he fairly entered into the contract that contains the clause. Mr. Stewart also argues that the exculpatory contract is unconscionable.

The parties agree that Mr. Stewart has a high school diploma and can read and write (Dkt. No. 49, at 2). The parties agree that Mr. Stewart signed his name, printed his name, and dated the form titled "Third Party Waiver for Contractors/Vendors." (Dkt. No. 49, at 2).

In support of his claim that a genuine issue of material fact exists, however, Mr. Stewart points to the facts and circumstances surrounding his signing of the exculpatory contract. After a full day of watching training videos, Mr. Stewart was given the Third Party Waiver, which was drafted by Nucor, as part of a packet of materials that he was asked to sign and date. He contends he also was required simultaneously to watch a safety video on which he would have to answer questions. Mr. Stewart believed he would not be hired by Vesuvius if he did not answer the safety video questions correctly, though it was unclear whether Mr. Stewart's belief was

correct.  When pressed in his deposition, Mr. Stewart eventually agreed with Nucor that he had an opportunity to read the paperwork, although he contends it was a rushed opportunity (Dkt. No. 45-2, at 20 (responding "[y]es" to the question "so you had the opportunity to look at this paperwork that was given to you there at this particular job, right?")).  Despite this, Mr. Stewart claims he was rushed; he contends he did not read the document before signing it and now disputes whether he had an opportunity to read it before signing it, under the circumstances (Dkt. No. 49, at 2).

As to whether he was knowledgeable of the potential liability that was released, Mr. Stewart characterizes the testimony of the Nucor employee responsible for administering the Third Party Waiver and answering questions about it as showing the employee himself did not understand the purpose of the waiver.  The Court disagrees with this characterization (Dkt. No. 48-3, at 3 (Nucor employee:  "You waive your rights to do workmen's comp against Nucor or sue Nucor or whatever.")).  Regardless, Mr. Stewart agrees with Nucor that he had no questions for the Nucor employee administering the paperwork (Dkt. No. 49, at 2).  Mr. Stewart did not ask about the meaning of the "Third Party Waivers for Contractors/Vendors" nor did he ask about the effect of not signing it (*Id.*).

Based on the record evidence before the Court, with all justifiable inferences drawn in Mr. Stewart's favor, the Court finds that Mr. Stewart has not presented facts and circumstances creating a genuine issue of material fact as to whether he fairly entered into the Third Party Waiver or as to whether he was knowledgeable of the potential liability being released by the Third Party Waiver.  Under the case law cited by Nucor, on the undisputed facts as to which both parties agree, Mr. Stewart is deemed to have read and understood the Third Party Waiver.  *See Jordan v. Diamond Equip. & Supply Co.*, 207 S.W.3d 525, 532 (2005) ("Ultimately, [plaintiff] is

bound to know the contents of the contract that he signed."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 S.W.3d at 785 ("The language of the contracts was there for all parties to read; it was conspicuous; and there is no proof it was misrepresented in any way. [The signatory] offered no evidence of fraud, duress, undue influence, lack of capacity, mutual mistake, or inequitable conduct sufficient to void the contracts."); *LNV Corp. v. Becton*, 2012 WL 1066305, at 3 (E.D. Ark. 2012) ("While Defendant argues that he had no knowledge of the potential liability he was releasing, he has failed to offer any evidence to support this position. . . . Defendant was required to know the contents of the contract and if he did not understand them, he had a duty to figure them out."); *Ray v. Albemarle Corp.*, 2009 WL 2447919, at 3 (W.D. Ark. 2009) ("It is well established in Arkansas law that a party is bound under the law to know the contents of the documents he signs and cannot excuse himself from those contents by alleging he did know what the documents contained." (citing *Carmichael v. Nationwide Life Ins. Co.*, 810 S.W.2d 39 (1991); *Pittsburg Steel Co. v. Wood*, 160 S.W. 519 (1913))). Mr. Stewart cites no authority showing that these cases do not apply or finding that facts and circumstances similar to those here prove that the signatory was made unfairly to enter into the contract or was unknowledgeable.

The Court also determines that there is no genuine issue of material fact as to whether the Third Party Waiver was unconscionable. In assessing whether a particular contractual provision is unconscionable under Arkansas law, this Court must review the totality of the circumstances surrounding the negotiation and execution of the contract. *Jordan*, 207 S.W.3d at 535. Two important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question. *Id*. An equally important factor that must be balanced in making this determination is

whether the provision is commercially reasonable according to the mores and business practices of the time and place. *Gelderman & Co. v. Lane Processing, Inc.*, 527 F.2d 571, 576 (8th Cir. 1975) (citation omitted) (internal quotation marks omitted). "It is not the province of the courts to scrutinize all contracts with a paternalistic attitude and summarily conclude that they are partially or totally unenforceable merely because an aggrieved party believes that the contract has subsequently proved to be unfair or less beneficial than anticipated." *Id.*

Again, the Court rejects the argument that Mr. Stewart was not aware of or did not comprehend the provision, as it was made available for him to read and he did not ask any clarifying questions before returning it signed. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 S.W.3d at 784 (rejecting the argument that the signatory did not comprehend the exculpatory provision when the provision was available for him to read). As to bargaining power, Nucor presents evidence that Mr. Stewart could have sought other employment options at the time. *See id.* (taking into consideration the availability of services from other providers as part of the unconscionability analysis). Mr. Stewart attempts to challenge this assertion, but taking all record evidence into account, the Court credits the assertion. Nucor submits an affidavit from Mr. Hays supporting Nucor's contention that Systems Contracting Corporation routinely hired MIG and arc welders and employed six new welders at its Blytheville location during the months of May and June 2010 (Dkt. No. 45-3). In response to the affidavit, Mr. Stewart claims only that it does not show the corporation was hiring workers with his job skills. Mr. Stewart's own complaint alleges that he has "special skills" as a MIG and arc welder (Dkt. No. 1-1, at 5). Lastly, there is nothing in the record showing that the Third Party Wavier is commercially unreasonable according to local mores and business practices, as Nucor cites many cases upholding the validity of similar exculpatory contracts. *See, e.g.*, *Edgin v. Entergy*

*Operations, Inc.*, 961 S.W.2d 724 (Ark. 1998) (acknowledging that a contract that provides that, in exchange for employment, the employee relinquishes any additional claims for work-related injuries, which are covered by workers' compensation benefits, against the employer's clients or customers is not *per se* void as being against public policy).

**IV.     Conclusion**

For the reasons above, the Court grants Nucor's motion for summary judgment (Dkt. No. 45).  Mr. Stewart's claims against Nucor are dismissed, and Mr. Stewart's pending motions *in limine* is denied as moot (Dkt. Nos. 53 & 67).

SO ORDERED this 13th day of October, 2015.


KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE